WILLIAM H. LOEHDE, Appellee, *vs.* JACOB GLOS, Appellant.

*Opinion filed October 16, 1914—Rehearing denied Dec. 8, 1914.*

1. EVIDENCE—*partnership signature not presumed to have been written after partnership ceased.* Where the signature to the certificate to an abstract of title is proved to be in the handwriting of one member of the firm it is not necessary to prove that the signature was attached before the partnership ceased to exist, as it will not be presumed that the partner signed the firm name when there was no firm.

2. SAME—*when objection must point out alleged unintelligible matter in abstract of title.* An objection that an abstract of title contains matter, in the form of isolated letters, figures and words, which makes the document unintelligible "except in certain parts thereof," is properly overruled where no attempt is made to point out the unintelligible portions so their meaning can be explained.

3. CONSTITUTIONAL LAW—*meaning of provision requiring use of English language in judicial proceedings.* The constitutional provision that judicial proceedings shall be preserved and published in no other than the English language refers to the preservation and publication of the record history of a cause, while the provision that such proceedings shall be conducted in the English language does not mean that the oral testimony, depositions and documentary evidence shall be in the English language, but only that their meaning shall be explained in the English language to the court and jury.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

JOHN R. O'CONNOR, for appellant.

WINTERS, PRICE & STEVENS, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, William H. Loehde, filed his application in the circuit court of Cook county on October 2, 1913, to register his title in fee simple to lot 24, in block 3, in Ashland addition to Ravenswood. The appellant, Jacob Glos, was one of the defendants under an allegation that he was

265 – 26

the holder of a tax deed which was void. The application was referred to an examiner of titles, who heard the evidence and reported that the appellee was the owner in fee simple of the premises at the date of filing his application, and that appellant was entitled to be re-paid the sums of money expended by him in procuring his tax deed and in payment of general taxes and a special assessment. The court overruled exceptions to the report and ordered the title of appellee registered, upon condition that he pay to appellant, or to the clerk of the court for his use, $835.59 and $5 costs. The money was paid to the clerk of the court for the use of the appellant, who appealed from the decree.

The evidence of title consisted of a certified copy of an abstract made by Haddock, Vallette & Rickcords and an abstract made by the recorder of deeds of Cook county. The certified copy was objected to on the ground that there was no proof that the signature to the certificate was genuine, and the abstract of the recorder was objected to as not being intelligible on account of abbreviations and arbitrary signs not in the English language. The abstract made by Haddock, Vallette & Rickcords purported to show the condition of the title up to the time it was made, and it was dated "Chicago, December twenty-third (23d), 1890," and under this was the firm name. It was followed by a certificate that it was a true copy of the original examinations of title, which was signed with the firm name but not dated. A witness who had been in the real estate business in Chicago since 1871 testified that he knew the firm of Haddock, Vallette & Rickcords; that their business was the making of abstracts of title to property in Cook county for others for hire; that they were in that business in 1890, at the date of the abstract; that he knew the firm signature appended to the certificate and that it was written by Mr. Rickcords, who was a member of the firm and who was accustomed and authorized to sign the firm name to ab-

stracts made in the ordinary course of business. The firm was dissolved and ceased to exist at some time after the date mentioned, and the objection urged by the appellant is, that the witness did not know the exact date when the signature was appended to the certificate and that it might have been made after the dissolution of the partnership. The signature to the certificate was proved to be in the handwriting of Mr. Rickcords, a member of the firm, and it will not be presumed that he signed the firm name when there was no firm and after it had ceased to exist. While not conclusive, the presumption would be that the firm was in existence. The objection was without force.

The abstract made by the recorder of deeds contained numerous letters which were neither English words nor abbreviations of such words commonly used in the English language. They would, perhaps, be understood by persons engaged in the abstract business as having some meaning in the English language, but their meaning could not be ascertained without some knowledge other than knowledge of the English language. Here is a sample of such letters in a description of a note secured by a trust deed: "with int at 7 p c p a p s a." The objection to this abstract is based on section 18 of the schedule of the constitution, which is as follows: "All laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings, shall be conducted, preserved and published in no other than the English language."

In its broadest sense the term "judicial proceedings" embraces all proceedings in a court of justice, but such proceedings are not all preserved or published. The record history of a cause is alone preserved, and the constitutional provision that it shall be preserved in no other than the English language refers only to such record. That record is for the information of citizens and litigants, and the constitutional provision requires that it shall be so preserved and published that it will be intelligible to a person under-

standing the English language, without other knowledge. (*Stein* v. *Meyers,* 253 Ill. 199.) The individual need not seek the aid of experts or persons skilled in any art or profession for the purpose of understanding the meaning of the record, but the constitution contemplates that it shall be so preserved that it may be understood without such aid. It is not so, however, with the provision that judicial proceedings must be conducted in no other than the English language, which from the very necessity of the case must often include words and instruments in foreign languages. If it were not so, the provision that every person ought to find a certain remedy in the laws for all injuries and wrongs would have no meaning as applied to numerous injuries and wrongs. Here becomes manifest the misconception of counsel in seeking to have applied to all judicial proceedings the same rule applicable to the record proper. The constitution recognized an existing system of laws and judicial proceedings by providing that the right of trial by jury should remain inviolate and the privilege of the writ of *habeas corpus* should not be suspended unless under certain circumstances. The system of laws and judicial proceedings had always permitted the admission in evidence of testimony or depositions or instruments in a foreign language. Instruments in a foreign language may be the very foundation and basis of rights, and such instruments are always admitted in evidence in the courts, with testimony explanatory of their proper meaning in English. (2 Phillips on Evidence, [Cowen, Hill & Edw. notes,] 709-733; 1 Greenleaf on Evidence,—14th ed.—sec. 280.) Actions may be brought for libel or slander published or uttered in a foreign language, and the words of the foreign language are evidence to sustain the action and obtain redress for the injury. In *Schmisseur* v. *Kreilich,* 92 Ill. 347, which was an action on the case for slander, the words were spoken in the French language and were so laid in the declaration, with a translation of their meaning into the English lan-

guage. On the trial there was evidence of the speaking of the words in French and the translation of their meaning in English, but the right of the plaintiff to recover rested upon the words spoken in French. If a contract or other document be in a foreign language, it, and it only, is the instrument of evidence and must be produced, proved and offered in evidence, but its meaning must be explained and must reach the court or jury in the English language. A witness who does not understand English can only testify in court in the language which he understands, and it would be contrary to reason to say that the constitution is violated in such a case because the evidence as it comes from the mouth of the witness is not English. The same rule applies in the case of depositions which must be interpreted to the court or jury. (*Cavasar* v. *Gonzales,* 33 Tex. 133; *Kuhtman* v. *Brown,* 4 Rich. 479.) Plats, drawings, casts, maps and photographs, none of which can be said to be in the English language and which require explanation in that language, have always been admitted in evidence; and the same is true of real objects or things which are material to a controversy, although testimony may be required to enable the jury to understand and apply such evidence to the issues in the case. The abstract was not excluded by the constitutional provision, and the letters, abbreviations or symbols might have been explained so that their meaning would be clear to the examiner and the court. This was not done, and if the objection made was sufficient it should have been sustained. The objection was that the abstract contained matter in the shape of isolated letters and figures and words, standing alone, which made the document unintelligible "except in certain parts thereof." Some of the isolated letters, figures and words were not intelligible, but an objection to them could have been obviated by evidence explanatory of their meaning. The objection being that the document was unintelligible except in certain parts thereof, those portions which were not intelligible should have been

pointed out, so that the objection might have been obviated by testimony. It is true that if a witness had spoken in the terms used in the abstract by reciting a series of letters and abbreviations his testimony would have been unintelligible, but the objection conceded that portions of the abstract were intelligible without designating what portions were objected to. The court did not err in disregarding the objection as made.

The decree is affirmed.

*Decree affirmed.*